GETTELMAN and another, Respondents, vs. COMMERCIAL UNION ASSURANCE COMPANY and others, Appellants.

*September 29 — October 22, 1897.*

*Parol evidence to show that an absolute assignment is merely a pledge: Insurance: Conditions as to title and false representations.*

1. Parol evidence is admissible to show that an assignment of a land contract by the purchaser, though absolute in form, was merely a pledge.
2. A policy of insurance containing a provision that it was understood that the assured held title to the property under a land contract, loss payable to the vendor as his interest might appear, and that the policy should be void if the interest of the assured was other than unconditional and sole ownership, or if the building was on

ground not owned by the assured in fee, is *held* to be void, where it appeared that, in fact, the assured was a mere pledgee of the land contract, and had at the time of the loss an insurable interest much less than the amount of the policy, and that the pledgor was still in possession of the property under the contract.

3. Under a clause in such policy declaring it void in case of any false swearing by the assured relating to the insurance after the loss, a statement made by the insured under oath in his proofs of loss, that the insured property belonged to the vendor subject to a land contract held by the insured, and that no other person had any interest therein, vitiates the policy if, in fact, another person is in possession under such land contract, and the insured holds the contract only as pledgee.

APPEALS from judgments of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

On April 29, 1893, the plaintiff *Durbin* owned the premises in question. On that day he and his wife made a contract with one Mrs. Mary Ann Lynds, whereby they agreed to convey said premises to Mrs. Lynds upon the payment of $7,461.40 within five years, as therein prescribed. Mrs. Lynds thereupon entered into possession of the premises, and has continued in such possession ever since. On November 17, 1893, Mrs. Lynds transferred the land contract to *Gettelman* by an assignment, absolute in form, to secure the repayment of moneys then loaned and thereafter to be loaned by *Gettelman* to Mrs. Lynds. Such assignment was so made (according to *Gettelman*) upon an agreement that he should keep up the payments to *Mr. Durbin* on the land contract, and Mrs. Lynds was to pay him a certain amount per month, and that, if she failed, then the property was to be his. According to Mrs. Lynds, at the time of so assigning the contract, *Gettelman* advanced $600, and agreed to make other advancements up to the aggregate sum of $1,622.28. In the spring of 1894, *Gettelman*, claiming that Mrs. Lynds was in default, commenced an action of wrongful detainer to put her and her husband out of possession. Thereupon Mrs. Lynds tendered to *Gettelman* $1,730,— being, as she claimed,

the whole amount due him, and kept such tender good. Mrs. Lynds then commenced a suit in equity to compel *Gettelman* to accept the amount so tendered in full payment, and to reassign the contract to her. On October 29, 1894, *Gettelman* received the $1,730, which had been so tendered and paid into court, pursuant to an order of the court that such acceptance should be without prejudice.

On or about November 26, 1894, *Gettelman* paid the three several premiums, and procured from each of the three several defendants a policy of insurance of $1,000 " on the two story and stone basement frame building and frame pavilion thereto attached, including plumbing and all permanent fixtures therein, occupied by tenant as saloon and dwelling, situated" as therein described, and which policy contained the following provision, to wit: " It is understood that the assured holds title to the property herein described under land contract, and loss, if any, payable to *John Durbin*, as his interest may appear. . . . *This entire policy,* unless otherwise provided by agreement indorsed hereon or added hereto, *shall be void* if . . . the *interest* of the assured be other than *unconditional and sole ownership*, or if the subject of insurance be a building on ground not owned by the insured *in fee simple.* . . . This entire policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." On May 1, 1895, it was held in the equity suit mentioned that the assignment to *Gettelman* was executed and given as security for money by him loaned and other sums to be advanced to Mrs. Lynds, and awarded him a lien upon the premises for the payment of the sums remaining unpaid, with interest. On July 10, 1895, the property so insured was totally destroyed by fire. On August 31, 1895, *Gettelman* furnished to the defendants, respectively, proofs of loss, as required by such policies.

On July 27, 1896, the plaintiffs commenced this action against the three insurance companies, as provided by ch. 235, Laws of 1893. Upon the issues made by the complaint of the plaintiffs and the answers of the three several defendants the cause was tried; and upon the trial it was admitted by the plaintiffs that the amount unpaid and owing to *Gettelman* on such debt so secured by the assignment of the contract at the time of the fire, and on August 23, 1895, being the day on which such proofs were made, was only $303.66, together with interest thereon at six per cent. per annum from November 15, 1894, and costs; and that, except as thus stated, *Gettelman* had no further or other interest in the premises described in the policy of insurance. At the close of the trial the court directed the jury to return a verdict in favor of the plaintiffs in the sum of $3,240, and such verdict was so returned accordingly. Thereupon the court ordered such verdict to stand, and directed a judgment for the plaintiffs against each defendant for the sum of $1,080 upon the verdict. From the three several judgments entered thereon accordingly, the three several defendants have, respectively, appealed.

For the appellants there was a brief by *Quarles, Spence & Quarles,* and oral argument by *Charles Quarles.*

For the respondents there was a brief by *K. Shawvan,* attorney, and *J. M. Clarke,* counsel, and oral argument by *Mr. Shawvan.*

CASSODAY, C. J.   From the facts stated, it is very manifest that neither at the time of procuring the policies, nor at any time thereafter, did *Gettelman* have any right, title, or interest in or to the land contract, except that he held it as a pledge from Mrs. Lynds to secure him for the repayment of $303.66, which he had advanced for her benefit, and interest thereon at six per cent. from November 15, 1894. It is equally manifest that at the time the policies were procured,

and at all times during the life of the policies, Mrs. Lynds was in the exclusive possession of the premises, and held the same as vendee under the contract from *Durbin*, as vendor. True, she had, by way of an assignment, pledged the contract to *Gettelman* to secure the repayment of the amount so advanced; but there is nothing in that assignment nor in the record to indicate that *Gettelman* was to have possession of the premises, nor that she or any one else was thereafter to occupy the saloon and dwelling house upon the premises, as his tenant, as falsely recited in the policy. The mere fact that the written assignment was absolute in form did not preclude parol evidence to show that the transaction was merely a pledge to secure the repayment of moneys advanced. *Wilcox v. Bates*, 26 Wis. 465; *Schriber v. Le Clair*, 66 Wis. 579; *Carey v. Liverpool & L. & G. Ins. Co.* 92 Wis. 538.

The fact that, four weeks prior to procuring the policies, *Gettelman* consented to receive, and did receive, the $1,730 which Mrs. Lynds had previously tendered to redeem the contract from such pledge, would seem to be conclusive that he then understood that he held the assignment as mere security. True, such acceptance was under an order that it should not prejudice his right to contest Mrs. Lynds' claim, and that it should not be construed as an acceptance in full payment; but he had no right to the money, except as a creditor in repayment for moneys so advanced, and for which he held the assignment as security. There can be no question but that Mrs. Lynds, being in the absolute possession of the premises at the time the insurance was procured, and having previously paid a large amount upon the contract, had an insurable interest in the building. *Johannes v. Standard Fire Office*, 70 Wis. 196; *Horsch v. Dwelling House Ins. Co.* 77 Wis. 4; *Carey v. Liverpool & L. & G. Ins. Co.* 92 Wis. 538. It is also certain that the vendor, *Durbin*, had an insurable interest in the building. While *Gettelman* was never in possession of the premises, and his beneficial interest

therein was very much less than either of the others, yet it. may be assumed that he had an insurable interest therein.

The important question is whether, upon the facts stated, the plaintiffs can recover upon the policies in question. The complaint, verified by *Durbin*, alleges, in effect, that ever since November 17, 1893, *Gettelman* had been continuously the owner and holder of the land contract, and all the right,. title, and interest which Mrs. Lynds had in and to the land and premises therein described, so conveyed to him by said assignment. Had *Gettelman*, at the time he procured the policies, thus been the unconditional and sole owner of the land contract, it might well have been argued that the plaintiffs could recover in this action, notwithstanding the policies. each recite that the same should be void if the building insured was situated "on ground not owned by" him "*in fee simple*," since each policy also recites that he held title to the property under land contract, and that the loss, if any,. should be payable to *John Durbin*, as his interest might appear. But, as indicated, *Gettelman* was not the unconditional and sole owner of that contract. He held the assignment merely as security for moneys advanced, and subject to be extinguished at any moment by the payment of such indebtedness. Mrs. Lynds was at all times in the exclusive possession of the premises insured, and the real owner of the contract; and her right, title, and interest in and to the same could not. be extinguished, except by her failure to pay and apt proceedings to bar her of such right, title, and interest. There is no claim that any such proceeding was ever instituted, nor that she was ever barred of any such possession, right, title, or interest. Her possession, title, and interest were certainly material to the risk; and yet, if the recovery of the plaintiffs. was to stand, she could not share in the amount recovered. *Edwards v. Agricultural Ins. Co.* 88 Wis. 450. The action is to recover upon policies of insurance, each of which expressly provides, in effect, that the entire policy should be.

Gettelman and another vs. Commercial Union Assurance Co. and others.

void if the interest of *Gettelman* was "other than unconditional and sole ownership." His interest was not only very small as compared with the interest of Mrs. Lynds, but was conditional. Upon the admitted facts and the express terms of the policy, it would seem to have been void in its inception. *Hankins v. Rockford Ins. Co.* 70 Wis. 1; *O'Brien v. Home Ins. Co.* 79 Wis. 403; *Stevens v. Queen Ins. Co.* 81 Wis. 335; *Wilcox v. Continental Ins. Co.* 85 Wis. 193. It is no answer to say that *Durbin's* interest in the premises was greater than the insurance. *Durbin* did not procure the policies, but *Gettelman* did; and he took each policy containing a clause which, under existing conditions, known to him at the time, made it void in its inception.

Besides, the policy contained another clause, quoted in the statement, making it entirely void in case of any fraud or false swearing by the assured, relating to the insurance or the subject thereof, whether before *or after the loss.* *Gettelman*, in his proofs of loss, testified, under oath, to the effect that the property insured "belonged exclusively to *John Durbin*, subject to a land contract held by *Adam Gettelman*," and that "*no other person or persons had any interest therein.*" This was certainly false, and in view of *Gettelman's* knowledge of all the facts and his admissions upon the trial, as to Mrs. Lynds' interest and the extent of his own interest, it would seem that it must have been made with the intent to bring his claim within the terms of the respective policies, and thus deceive the companies by concealing from them Mrs. Lynds' interest in the premises and ownership of the land contract. If such false swearing was made with such intent, then there can be no question, upon well-recognized principles of law, but it avoided the policy. *F. Dohmen Co. v. Niagara Fire Ins. Co.* 96 Wis. 38, and cases there cited, particularly *Claflin v. Comm. Ins. Co.* 110 U. S. 81. If such intent does not appear as a matter of law, still it would be a question of fact for the jury. *Id.*

In any view of the case, it was error to direct a verdict in favor of the plaintiffs.

*By the Court.*— The three several judgments of the superior court of Milwaukee county are each reversed, and the cause is remanded for a new trial.