## In re OHIO COPPER MINING CO.

(District Court, S. D. New York. January 27, 1917.)

1. BANKRUPTCY ⊙→13—ENJOINING PROCEEDINGS IN OTHER COURTS—JURISDICTION OF PERSON—"APPEARANCE."

A party denied leave to intervene in a bankruptcy proceeding, but who on various occasions addressed the court, did not thereby become a party so as to authorize the bankruptcy court in restraining him from taking proceedings affecting the orders or decrees of the bankruptcy court in other courts, as the casual presence of a litigant or attorney in the bankruptcy court is not an "apppearance."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 13–16, 19.

For other definitions, see Words and Phrases, First and Second Series, Appearance.]

2. BANKRUPTCY ⊙→13—ENJOINING PROCEEDINGS IN OTHER COURTS—JURISDICTION OF PERSON.

A company permitted to intervene in a bankruptcy proceeding on its own motion submits itself to the jurisdiction of the bankruptcy court, and may be enjoined from taking proceedings in other courts amounting to an attack on the decrees or orders of the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 13–16, 19.]

3. BANKRUPTCY ⊙→11—ENJOINING PROCEEDINGS IN OTHER COURTS—POWER OF COURT.

Within the rule that a court of equity will enjoin a party to its proceedings from attacking its decrees and orders in other courts and jurisdictions, the bankruptcy court is a court of equity, and may enjoin proceedings affecting orders of the bankruptcy court in its original or an-

⊙→For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cillary jurisdiction, provided the person against whom the decree or order is directed is a party to the proceeding and has been served in personam.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11.]

In the Matter of the Ohio Copper Mining Company, bankrupt. On motion for an order restraining certain parties from taking proceed- ings in other courts. Motion granted as to certain parties.

See, also, 237 Fed. 490.

Emanuel J. Myers, of New York City, for the motion.

Franklin Bien, of New York City, opposed.

MAYER, District Judge. This is a motion in the nature of a bill of peace for—

"an order * * * restraining the said Arthur P. Heinze, Madison Real Property & Security Company, Western Development Company, United Copper Securities Company, International and Intercontinental Mining & Refining Company, Stockholders' Protective Committee, of which William J. Brown is chairman, Frederick W. Frost, Otto B. Schmidt, and others from taking any other or further steps or proceedings of any character to interfere with the said bankrupt estate and the enjoyment thereof, as well as the title thereto, except by and through proceedings in this court, and for such other and fur- ther order and relief as may be just and proper in the premises."

It is urged, in effect, that all of the parties sought to be restrained have either appeared in the bankruptcy proceeding or have so acted as to subject themselves to the order herein asked for.

[1] No time need be spent in discussing the status of any of the above-named persons or corporations except Madison Real Property & Security Company. In the case of some of the persons referred to in the prayer for relief, no service has been had, and in the case of others there has been no such conduct as constitutes an appear- ance in the bankruptcy court in this proceeding. Reference to Heinze will illustrate what is meant. Heinze and his attorney have addressed the court (meaning both the judge presiding and the referee) on vari- ous occasions, but the motion of Heinze for leave to intervene in the bankruptcy proceeding has been denied. The casual presence of a litigant or attorney in the bankruptcy court cannot be construed into an appearance, nor can the insistent endeavor of a litigant or attor- ney to have his views accepted be regarded as an appearance in the technical sense. If any such doctrine were to prevail, the bankruptcy court would be greatly embarrassed. On the questions involving the sale of assets, a practical administration of the act often makes neces- sary or desirable the hearing of any person who desires to submit his views to the court, and it certainly would be an open door to infinite complications if anybody who thus addressed the court were there- after to be regarded as a party to the proceeding. In the case at bar it is highly inconsistent (to put the matter mildly) for the court to say to Heinze that he cannot intervene in the bankruptcy proceeding to attack such orders of court as he may be advised. and a moment later to say that the court has power to compel him to remain in the proceeding from which the court has just excluded him.

Elaborate citation of authority, it seems to me, is unnecessary to

dispose of the motion so far as it affects all but the Madison Company, and except as to that company the motion is denied.

[2] In respect of the Madison Company, a rather interesting question is presented. That company, upon its own motion, has obtained an order allowing it to intervene in the bankruptcy proceeding. It has submitted itself to the jurisdiction of the bankruptcy court, and there it must stay so far as concerns any attack by it upon the orders of the bankruptcy court.

The petition in involuntary bankruptcy was filed against this bankrupt in 1914, and the adjudication of bankruptcy was had on September 19, 1914. The property of the bankrupt has therefore been in the custody of this court since 1914.

[3] It is the long-settled and salutary practice of a court of equity to protect purchasers at sales held pursuant to its decrees, and a court of equity will not permit a party to institute in other courts and jurisdictions litigations which attack the title of the purchaser. Courts of equity will not permit parties to play fast and loose, and the attitude of the courts is forcibly expressed by Mr. Justice Brewer in Riverdale Mills v. Manufacturing Co., 198 U. S. at page 192, 25 Sup. Ct. 630, 49 L. Ed. 1008, when he says:

"* * * * And when it seemed that at last litigation was at an end, the foreclosure consummated, and the title established in the purchaser, we are told that it all amounted to nothing; that parties, lawyers, and courts have been spending their time and labor in simply beating the air, the title to the property conveyed by the trust deed being exactly where it was before the litigation commenced, and the party which had acquired possession by that litigation subject to an obligation to account as a mortgagee in possession."

It has therefore become elementary that a court of equity will enjoin a party to the proceedings from attacking in other courts or jurisdictions its own decrees and orders. If the party is aggrieved, his remedy is by review, but not by resort elsewhere.

The next question is whether such power has been conferred upon the bankruptcy court. The bankruptcy court is a court of equity, armed with equity powers in aid of its jurisdiction and the enforcement of its orders. While the preliminary procedure is different in a court of bankruptcy from that which obtains in a court of equity, the decree ordering a sale in equity and the order directing a sale in bankruptcy are the same so far as they invite enforcement by the court, and so far as the purchaser thereunder is entitled to the court's protection. A court of bankruptcy may therefore accomplish by its order a result similar to that which could be accomplished by a court of equity under similar circumstances, provided, of course, the person against whom the decree or order is directed was a party to the proceeding and has been served in personam. Judge Van Valkenburgh in Re Swofford Bros. Dry Goods Co. (D. C.) 180 Fed. 549, has discussed this question with care, and I agree with the views expressed by him. In that case a reference to the opinion will show that the court considered most of the important decisions upon this subject-matter. The only distinction between that case and the case of the Madison Company at bar is that the Madison Company began the action, here sought to be restrained, prior to the making of certain orders of this court,

whereas, in the Swofford Case, supra, Rosier began his action in the state court after the bankruptcy court had made its order.

The action complained of was begun by Heinze and Madison Real Property & Security Company against Ohio Copper Mining Company and others on October 13, 1916, in the New York Supreme Court, Nassau county, after the issuance of a summons, together with notice of the relief asked for in accordance with the New York practice. The relief asked for seems to refer to several important matters which had occurred in respect of this bankrupt estate down to October 13, 1916. It is difficult to separate the relief asked for in respect of what has taken place in the bankruptcy court from the relief asked for in respect of matters with which the bankruptcy court has had no concern and will have no concern and has no jurisdiction. To illustrate: The ninth demand, relating to certain directors of the bankrupt, seems to be foreign to any matters now or heretofore before the bankruptcy court. On the other hand, demand No. 2 seems to attack the order of the bankruptcy court dated August 15, 1916, and any relevant subsequent orders relating to the sale of the remainder of the bankrupt estate, including the right of redemption given by the Utah statutes.

Without prolonging this memorandum by an attempt to go over each demand—a matter which can be covered in the order to be submitted on my decision—the principle to which I shall adhere is this: That an injunction order will go against Madison Company, restraining that company from bringing any action, suit, or proceeding in any court in respect of any orders of the United States District Court sitting in bankruptcy, either in the original or ancillary jurisdiction.

The case at bar is not like Central Trust Co. v. Chicago, R. I. & P. R. R. Co., 224 Fed. 706, 140 C. C. A. 246. Here the court had jurisdiction of the fund before the state court action was begun by Heinze and Madison Company, and here also Madison Company became a party on its own motion, thus submitting itself completely to the jurisdiction of the bankruptcy court.

The motion as to Madison Company will be granted to the extent indicated. An order in accordance herewith may be submitted on five days' notice of settlement.

### Memorandum.

Since filing my memorandum dated January 27, 1917, my attention has been called to the fact that an order dated October 12, 1916, was made by Judge Manton, allowing intervention of International & Intercontinental Mining & Refining Company. In the voluminous list of papers this fact escaped my attention. The International, etc., Company thus comes within the ruling applied to the Madison Company, and for that reason is included in the order which I am signing contemporaneously herewith.