LIPPINCOTT and others, Appellants, vs. LAWRIE, imp., Respondent.

*October 23—November 17, 1903.*

*Mortgages: Variance by parol: Collateral security: Prospective indebtedness: Appeal: Examination of evidence rejected by trial court: Direction of judgment.*

1. Parol evidence is admissible to contradict the absolute terms of a note and mortgage by showing that they were not given for a debt then existing, but merely as collateral security, and to describe or define the undertaking or liability to which they are collateral.

2. Thus, in this case, parol evidence was admissible to show that a note and mortgage for $3,000 were given as security for any balance which might thereafter be due from the mortgagor, not only for goods purchased up to said amount, but also as continuing security for goods purchased beyond that amount— the liability on the instruments themselves, however, not to exceed $3,000.

3. Where evidence as to a controlling fact was all received by the trial court and appears in the bill of exceptions, although, after being received, it was stricken out as inadmissible by the trial court, which accordingly held that there was no evidence to show such fact, this court, upon holding such evidence admissible, will examine it and, if it establishes said fact with reasonable certainty, will so decide and will direct the trial court to act in accordance with that decision, especially where there is no probability that the evidence would be different upon a retrial.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

On September 20, 1897, one D. J. Lawrie, the husband of respondent, *Mertie Lawrie,* was a tailor in Milwaukee, and had for some time before been purchasing cloths of the plaintiffs. He desired to so continue, and they declined to allow such line of credit as he had theretofore enjoyed unless some security were given. It was proposed and arranged that he and his wife should give a note and mortgage for $3,000 'as security for prospective indebtedness. Plaintiffs' agent came to Milwaukee, and had a meeting with D. J. and *Mertie Lawrie* in the presence of an attorney, at which was executed an ordinary promissory note for $3,000, running three years, with privilege of payment at any time in sums not less than $100, payable to the attorney, who immediately made an assignment to the plaintiffs. During the ensuing year and a half, D. J. Lawrie purchased goods to the amount of about $4,800, and from time to time made payments thereon, in the total aggregating about $2,300, leaving unpaid about $700 of the first $3,000 worth of goods and about $2,500 of total indebtedness. He then became bankrupt. Evidence was given as to the agreement of the parties, had at the time of the execution of the note and mortgage, to the effect that the same were to stand as a running security for any balance which might become due from D. J. Lawrie to the plaintiffs. The court admitted the evidence to the extent of

proving that the only liability upon that note and mortgage was for goods to be purchased, but excluded the evidence that it was to be a continuing security for any goods beyond the first $3,000, on the stated theory that such evidence tended to vary the terms of the written agreement. He accordingly held that there was no evidence to prove liability in excess of the approximately $700 remaining unpaid out of the first $3,000, and rendered judgment for that amount, refusing judgment for the remaining $1,800. From that judgment the plaintiffs bring this appeal.

*F. A. Geiger,* for the appellants.

For the respondent there was a brief by *Timlin & Glicksman,* and oral argument by *Nathan Glicksman.*

Dodge, J.   When the trial court ruled that parol evidence might be admitted to show that the absolute acknowledgment of the existence of a debt of $3,000, and the promise to pay the same, expressed by the note and mortgage in suit, were not to be taken according to their words, but that said papers, absolute in form, were given and received merely as collateral security for some other liability, he ruled rightly. 2 Jones, Ev. § 507; *Kent v. Agard,* 24 Wis. 378; *Andrews v. Jenkins,* 39 Wis. 476, 481; *Manufacturers' Bank v. Rugee,* 59 Wis. 221, 223, 18 N. W. 251; *Lamson v. Moffat,* 61 Wis. 153, 156, 21 N. W. 62; *Gettelman v. Commercial U. A. Co.* 97 Wis. 237, 241, 72 N. W. 627; *Nauman v. Ullman,* 102 Wis. 92, 78 N. W. 159; *Brader v. Brader,* 110 Wis. 423, 431, 85 N. W. 681; *Bank of Utica v. Finch,* 3 Barb. Ch. 293; *Ferris v. Hard,* 135 N. Y. 354, 32 N. E. 129; *Kaphan v. Ryan,* 16 S. C. 352; *Davis v. Crookston W. P. & L. Co.* 57 Minn. 402, 59 N. W. 482.

These authorities establish that an absolute written conveyance of property or an absolute written promise to pay a specified sum may be varied or contradicted by parol to the extent of showing that each is a collateral security merely,

since that amounts merely to proving the whole agreement, of which the writing purports to be only a part. As a corollary it is, of course, true that such evidence is receivable to describe and define the undertaking or liability to which such writing stands as collateral. In this case there were but two witnesses who testified that the note and mortgage sued on were given as collateral at all, and they testified that they were given and received as security for any balance which might at any time exist upon an anticipated running account between plaintiffs, as wholesalers, and Daniel J. Lawrie, as purchaser of goods. The trial court held that evidence of such fact could not be received, because it varied the terms of the writings, and then found that the note and mortgage were given as security for the indebtedness of Daniel J. Lawrie for the first $3,000 worth of goods he should buy of plaintiffs—an agreement to which no witness testified. It should be noted that the only other witness to the transaction—the respondent herself—testified that nothing was said in her presence to indicate that the note and mortgage were other than they appeared on their face, namely, an absolute promise by D. J. Lawrie and herself to pay plaintiffs the full sum of $3,000 for a consideration already received.

The attitude of the court is obviously untenable. Either the instruments sued on must be varied in their legal effect in accordance with the parol agreement in fact made by the parties, or they cannot be varied at all. They are either enforceable according to their terms for the full amount of $3,000, or their enforceability is limited to that less amount which the evidence shows the parties agreed to. The ruling was, in effect, that the parties might show that the note and mortgage were given as collateral, but could not show to what they were so collateral. It no more varied the writing to show that the papers were collateral to one undertaking than to another. Any such proof, of course, had effect to vary and modify the writings, but in a permitted respect, as

shown by the above-cited authorities, so long, of course, as no attempt was made to establish a liability on the writings greater than $3,000, their face. *Bank of Utica v. Finch, supra.* The variance so provable was in either event favorable to defendant, not to plaintiffs. It tended to curtail the otherwise absolute liability for their face established by the papers themselves. The court carried that curtailment far beyond any warranted by the rejected evidence, and did so merely by excluding evidence of what the parol agreement really was. In this, palpable error was committed, which must necessitate reversal.

That result being inevitable, the next question presented for solution is upon the direction to be given the trial court. On the question of fact whether the agreement of the parties was that the note and mortgage in question should stand as continuing security for the balance of the merchandise account between plaintiffs and Daniel J. Lawrie, there is no finding. The court having rejected all evidence tending to sustain the affirmative, he thereupon limited his finding to the assertion that there was no evidence to support it. The evidence, however, was all received, though afterwards stricken out, and is all included in the bill of exceptions. The trial court has merely declined to pass upon its credibility, weight, and sufficiency to establish the fact testified to. In that situation, the duty of this court is declared in *Brown v. Griswold,* 109 Wis. 275, 280, 85 N. W. 363, as follows:

"If the evidence clearly supports the judgment, we should affirm it. . . . Failing this, if the question is in doubt and uncertain, so that a decision here might work injustice, we should reverse and remand for further trial. . . . But if an examination of the evidence discloses with reasonable certainty a preponderance in favor of the plaintiff's contention, it is our duty to direct judgment in accordance therewith."

An examination of the evidence on the subject discloses positive, direct, and intelligent testimony by the attorney

who drew the papers, and by the agent of the plaintiffs who made the bargain, that it was agreed with D. J. Lawrie, in the presence of his wife, that this note and mortgage should stand as a continuing security for any balance of account; that it was given for a term of three years, although it was understood that he was likely to need as much as or more than $3,000 worth of goods in the first year; and that it was given in the hope and expectation of his permanent continuance in business and ability to establish himself in easy circumstances if granted reasonable lines of credit. This purpose, so testified to, is further confirmed by prior correspondence between the defendant D. J. Lawrie and the plaintiffs. No other witness than these two was sworn, except the defendant *Mertie Lawrie,* who did not deny that the agreement between Mr. Lawrie and the plaintiffs or the plaintiffs' agent was as stated, but merely denied that the making of that agreement and the conversation testified to by the other witnesses took place in her presence or hearing. Another item of evidence principally relied on by respondent is the original complaint, afterwards amended out of the case, but which was introduced in evidence. It is claimed that that complaint alleges merely that the note and mortgage were given to secure $3,000, price of goods to be sold by plaintiffs to D. J. Lawrie, and is therefore inconsistent with the present claim. It cannot be denied that the original complaint is open to such construction, but it is rendered ambiguous by the asserted claim that nevertheless the note and mortgage were given as security for the entire amount of the account now claimed. Another bit of evidence mentioned by the respondent is that the note provided that it might be paid in instalments of not less than $100 at any time before maturity, which she claims is inconsistent with the idea of a continuing $3,000 guaranty throughout the three years. The fact is at least indicated by the copy of the note attached to the pleadings that it was written upon a blank form, prob-

ably containing this not unusual provision for instalment payments, the significance of which is, of course, thereby diminished. The foregoing is substantially all the evidence introduced upon which the trial court should have acted. There is nothing inherent in the testimony of either the attorney or the agent of the plaintiffs to cast doubt upon it. They were both men of intelligence and business understanding, who clearly comprehended the distinction between such an agreement as that found by the court and such as that contended for by the plaintiffs. The situation also is quite adequately disclosed, and renders it highly improbable that the plaintiffs would have deemed satisfactory a security merely for the first $3,000 worth of goods as a justification for continued extension of credit. Much that is said in *Shores v. Doherty,* 65 Wis. 153, 26 N. W. 577, in construing the agreement there under consideration, is even more cogently applicable to the probabilities in the situation of these parties. The only negation of these witnesses of any significance is the so-called admission contained in the original complaint. Our conclusion is that while the drawing of that document tends to throw into some measure of doubt the testimony of Mr. Moss, the attorney, it cannot suffice to overcome the entirely positive and direct testimony of the agent who in fact made the agreement, and whose version is now confirmed by Mr. Moss, after having his attention and memory fully aroused to the antithetic theories thereof. If that so-called admission be not sufficient to overcome the direct testimony, then the conclusion is obvious that there is a clear preponderance of evidence in favor of the cause of action as stated by the plaintiffs; and it becomes our duty to so decide, and to direct the trial court to act in accordance with that decision, especially since there are no probabilities suggested by the record that other evidence would be obtainable upon a retrial, or that the respondent has been induced to forego the offer of any evidence by reason of the ruling of the trial

court. Such fact could not well exist, for the ruling was not made until both parties had rested.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment according to the prayer of the complaint.